ANTHONY MICHAEL GLASSMAN (SBN 037934)
ALEXANDER RUFUS-ISAACS (SBN 135747)
RICHELLE L. KEMLER (SBN 232712)
GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 North Bedford Drive, Suite 204
Beverly Hills, California 90210-5157
Telephone: (310) 278-5100
Facsimile: (310) 271-6041

Attorneys for Plaintiff
DR. FREDERICK K. C. PRICE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Dr. FREDERICK K. C. PRICE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JOHN STOSSEL, an individual, GLEN RUPPEL, an individual, AMERICAN BROADCASTING COMPANIES, INC., a Delaware corporation, OLE ANTHONY, an individual, and TRINITY FOUNDATION, INC., an entity, form unknown,<br><br>Defendants. | Case No. CV08-3936 RGK (FFMx)<br><br>JOINT STIPULATION RE DISPUTE IN DISCOVERY MATTER<br><br>Honorable R. Gary Klausner<br><br>Date Filed:  December 18, 2007<br>Date Transferred: June 12, 2008<br><br>Trial Date:  None Set |

Plaintiff, Dr. Frederick K.C. Price ("Plaintiff" or "Dr. Price"), and Defendants, John Stossel, Glen Ruppel, American Broadcasting Companies, Inc. (the "ABC Defendants")' and Ole Anthony and Trinity Foundation, Inc. (the "Trinity Defendants)' submit the following Joint Stipulation regarding their discovery dispute.

///

171790.1

JOINT STIPULATION RE DISPUTE IN DISCOVERY MATTER

## I. PLAINTIFF'S INTRODUCTORY STATEMENT.

On March 23, 2007, the ABC Defendants broadcast a story on its evening program, "20/20" (the "Program"), concerning religious leaders who financially exploit their supporters by using donations to support their own extravagant lifestyles. One of the religious leaders featured in the Program was Dr. Price. The Program included less than a minute of film from a videotaped sermon ("Sermon") that Dr. Price preached 10 years ago in which he was discussing, hypothetically, in the first person singular, how people can have great wealth (the "Clip"), but still feel spiritually unfulfilled. But the passage, which would have placed the footage in the Clip in its proper context was intentionally omitted.

The Clip was edited into the Program in such a way as to cause reasonable viewers to believe (a) that Dr. Price was boasting that the great wealth to which he was referring in his hypothetical example, was his, (b) that he was able to enjoy this extravagant lifestyle because he was looting the Church's coffers, and (c) that Dr. Price was unethical, unfit to serve as a minister, lacked integrity, and that he had misappropriated and diverted church funds.

Further into the Program, Defendant Stossel introduces Rusty Leonard, the founder of MinistryWatch. Then as photographs of Plaintiff and the other featured preachers are shown to viewers, Stossel says of Leonard:

> … he thought it was unchristian that he and he and she and so many others ask donors for money but don't reveal exactly how they spend it. He says donors are being hosed.

Then, Plaintiff's ministry and some of the other ministries are referred to as the "bad guys", that their donors are being "hosed" and that donors should not donate to these ministries.

Defendants are filing a Special Motion to Strike pursuant to Cal. Code of Civ. Pro. § 425.16. Plaintiff has propounded limited discovery to Defendants to enable him to oppose Defendants' motion. All of the requested discovery relates to the editorial

1  process for the Program at issue and the footage received by the ABC Defendants from
2  the Trinity Defendants.

3  Defendants have objected to Plaintiff's discovery requests pending its Special
4  Motion to Strike. Defendants' position is that their Special Motion to Strike is limited to
5  the issue of "truth." However, to understand what the "truth" of the Program is, the
6  Court will have to determine the "gist" or "sting" of the Program. Plaintiff's
7  interpretation of the "gist" or "sting" of the Program is that it depicted him as a corrupt
8  and unethical preacher who was stealing from the church donors to fund his lavish
9  lifestyle. Defendants, on the other hand, argue that the "gist" and "sting" of the program
10 is simply that the Plaintiff is wealthy and hence no discovery as to their "intent" should
11 be permitted.

12 Plaintiff's belief that the defamatory implications alleged in the complaint are
13 reasonable, is supported by the Declaration of Professor Edward Finegan and by ten (10)
14 parishioners, all of whom have sworn that they understood the broadcasts to have
15 implied and insinuated that Plaintiff was corrupt, unethical and that he had stolen money
16 from his church. Plaintiff is informed and believes that evidence of the program that the
17 Defendants *intended* to broadcast will fully support Plaintiff's interpretation of the "gist"
18 and "sting" of the Program that was actually broadcast. The requested discovery is
19 crucial to enable Plaintiff to prove the reasonableness of the implications alleged.

20 Plaintiff has repeatedly asked defendants to confirm that they received ONLY the
21 footage which they aired on the broadcast. They have repeatedly refused to do so. Thus
22 Plaintiff, and the court, may assume that the ABC Defendants received more footage
23 than was aired and that they intentionally edited the footage so as to falsely attribute to
24 Plaintiff a statement which was not personal to him, to enable the ABC Defendants to
25 create a broadcast that appeared to have Plaintiff making a self-condemnatory statement.
26 The only reason Defendants would have falsely attributed such statements to Plaintiff
27 was to conform to a pre-determined defamatory story line.

28 Notwithstanding their adamant refusal to confirm that they only received the

footage aired, the ABC Defendants now urge the Court to deny Plaintiff and the Court access to this critical evidence, which will prove not only Defendants' knowledge of falsity and reckless disregard for the truth, but in addition will confirm the reasonableness of the defamatory implications alleged, i.e., that the broadcasts insinuated that Plaintiff was corrupt, immoral, and that he had misappropriated and diverted church funds for his own lavish lifestyle.

As further confirmation of what a review of the entirety of the footage ABC received from Trinity will reveal about their state of mind and intent to create the implications and insinuations about which Plaintiff complains, Defendants' Special Motion to Strike urges only one defense, i.e., the defense of truth. How extraordinary that in a public figure defamation case in which a broadcast network airs a self described expose' of televangelists entitled "Enough!", repeatedly states that their reporter, John Stossel, "is here to say enough", that donors are being "hosed" and that Plaintiff's conduct must be stopped, ABC, without explanation, has taken the extraordinary step of abandoning the defense of good faith and lack of knowledge of falsity or reckless disregard of truth or falsity. There can be only one reason for the abandonment of the defense which media defendants traditionally utilize, namely, ABC's knowledge that if the Court and Plaintiff are able to see and hear the entirety of the footage ABC received it will confirm that ABC intentionally edited the footage to falsely attribute the self-condemnatory statement, which conformed to ABC's pre-determined defamatory story line.

Defendants' transparent attempt to prevent the actual "truth" of their intent to defame Plaintiff from emerging must fail because as a matter of law evidence that a media defendant intended to defame a Plaintiff not only supports Plaintiff's obligation to present evidence of Defendants' state of mind, but also because evidence of such intent supports and confirms the reasonableness of the defamatory implications and insinuations alleged.

## II. ABC: INTRODUCTORY STATEMENT

Defendants American Broadcasting Companies, Inc., John Stossel, and Glenn Ruppel (collectively, "ABC") are in the process of completing and filing a special motion to strike Plaintiff's first amended complaint (the "Anti-SLAPP Motion") pursuant to section 425.16 of the California Code of Civil Procedure, which provides for the early dismissal of claims that threaten to chill the exercise of free speech (the "Anti-SLAPP Statute"). The Anti-SLAPP Motion will be based on only one issue: namely, Plaintiff's inability to prove that ABC made false statements of fact about him in a news report that ABC broadcast regarding the financial openness of religious organizations. Any evidence Plaintiff could possibly need to oppose the motion (*i.e.*, to prove falsity) is uniquely within *his* knowledge. Therefore, Plaintiff cannot justify the intrusive discovery he seeks, which contravenes the fundamental purpose of the Anti-SLAPP Statute.

Plaintiff seeks to delay the Anti-SLAPP Motion, and to undermine the purpose of the Anti-SLAPP Statute, by claiming that he needs time to take broad-spectrum depositions and conduct written discovery on an issue that has nothing to do with the motion: *i.e.*, ABC's editorial process in creating the news report that Plaintiff attacks. ABC's editorial process has no bearing whatsoever on the sole issue raised by ABC's Anti-SLAPP Motion – whether any statements of fact about Plaintiff were false. Those fact statements were either true or false; no amount of discovery as to ABC's editorial process could alter the answer to that question.

Plaintiff already delayed this action once, in a failed attempt to forum shop around the Anti-SLAPP Statute, when he dismissed this action and then re-filed it in New York. Now that the action has been returned to the proper venue, Plaintiff has selected yet another evasive stratagem. Plaintiff's efforts to avoid the dismissal of this meritless action and to circumvent the burdens placed on him by the Anti-SLAPP Statute should be rejected.

### A. ABC: BRIEF STATEMENT OF THE CASE

A proponent of the so-called "prosperity gospel," Plaintiff alleges that he is the founder of and principal preacher at the Crenshaw Christian Center Church of Los Angeles County, which Plaintiff claims is one of the largest churches in the United States. Plaintiff alleges that his televised church services reach an audience of 15,000,000 households worldwide. Plaintiff further claims that he has published at least 50 books on faith and prosperity, and claims sales of over 2,100,000 copies. Plaintiff agrees that he is a public figure. *See* First Am. Compl. ¶¶ 1, 18-19.

Plaintiff sued ABC along with Defendants Ole Anthony and Trinity Foundation, Inc. (jointly, "Trinity") for defamation and intentional infliction of emotional distress based on a news report regarding the fiscal transparency of religious organizations. That report was broadcast on ABC news programs "Good Morning America" and "20/20" on March 23, 2007 (the "News Report").

Plaintiff's claims are fatally defective as a matter of law. Because Plaintiff is a public figure and the News Report focuses on a matter of public concern, *Plaintiff* bears the burden of proving falsity. Plaintiff cannot satisfy that burden as a matter of law because the alleged statements about which he complains (if made) were (1) true or substantially true, (2) not of and concerning Plaintiff, and/or (3) not provably false statements of fact. In an effort to divert attention from these flaws in his claims, Plaintiff strains unreasonably to read "implied" statements into the News Report. Even a cursory review of the News Report, however, reveals that Plaintiff's interpretation simply cannot succeed in light of the undisputed content of the News Report itself. Plaintiff's emotional distress claim fails for the same reasons as his defamation claim. ABC will file the Anti-SLAPP Motion on these grounds on or before September 22, 2008. Pursuant to Local Rule 7-3, ABC has met and conferred with Plaintiff in regard to the precise scope of the motion on numerous occasions. Declaration of David E. Fink ("Fink Decl.") ¶ 11.

## B. ABC: PROCEDURAL HISTORY

On July 24, 2007, Plaintiff filed his complaint in Los Angeles Superior Court. ABC and Trinity removed the action to the United States District Court for the Central District of California (the "Central District") on September 17, 2007. The action was assigned to this Court. On October 15, 2007, the parties agreed to allow Plaintiff to dismiss his action, without prejudice, pursuant to Rule 41(a) of the Federal Rules of Civil Procedure, to allow the parties to pursue mediation without simultaneously having to file and oppose ABC's Anti-SLAPP Motion. Fink Decl. ¶ 7.

Following an unsuccessful mediation with the Honorable Lourdes Baird (Ret.), Plaintiff chose not to re-file his action in this Court. Instead, in an unabashed attempt to forum shop, Plaintiff filed a new complaint in the United States District Court for the Southern District of New York (the "Southern District") on December 17, 2007. ABC moved to transfer Plaintiff's new complaint back to the Central District pursuant to 28 U.S.C. § 1404. In connection with the motion to transfer, ABC pointed out that Plaintiff had admittedly re-filed his action in the Southern District to avoid California's Anti-SLAPP Statute. *Id.* ¶ 8. On June 4, 2008, the Southern District granted ABC's motion to transfer based on the following express finding:

> Price's apparent – albeit unsuccessful – forum shopping leads the Court to conclude that it is in the interest of justice to transfer this case to the state in which it originally commenced.

*Id.*

After this action was docketed back in this Court on June 17, 2008, Plaintiff stated his intent to amend his complaint. As a courtesy to Plaintiff, and to allow Defendants time to prepare the Anti-SLAPP Motion to address the new complaint, the parties stipulated that Plaintiff could amend the complaint if Defendants could have until September 22, 2008 to file the motion. Pursuant to the order on that stipulation, Plaintiff served his First Amended Complaint on August 13, 2008. *Id.* ¶ 9.

On July 31, 2008, Plaintiff noticed the depositions of John Stossel, Glenn Ruppel, and ABC employee Ruth Iwano, and requested that they produce numerous documents.

*Id.* ¶ 13. ABC served timely objections on August 19, 2008. *Id.* ¶ 14 Exs. B-D (Objections). Pursuant to Local Rule 37-1, the parties met and conferred regarding the objections and the depositions did not take place. *Id.* ¶ 15.

## II. TRINITY DEFENDANTS' INTRODUCTORY STATEMENT.

Trinity intends to join ABC's Anti-SLAPP motion. Currently, Price's theory of liability against Trinity is that the information provided to ABC was itself objectionable. Thus, when ABC republished the material in the 20/20 segment, both ABC and Trinity defamed Price. As set forth above, the grounds for ABC's anti-SLAPP motion is that the statement about Price are substantially true. Price's argument, in opposition to the anti-SLAPP motion, is that the 20/20 segment implied that he was unethical. As a matter of law, the court makes the "threshold determination whether the published statements could be understood as implying the alleged defamatory content."[1] In other words, the court need only consider the statements themselves to determine if the statements could reasonably have been understood as implying Price is unethical. No factual inquiry as to intent is required or is necessary.

In an effort to obfuscate the issues, Price seeks discovery on the defendants' intent behind publishing the allegedly defamatory statements. Price's contention is that proof of a defamatory intent will prove and corroborate that the published statements imply the alleged defamatory content. This is not the standard. The manner in which the alleged defamatory statements were ultimately understood is a question of fact for the jury to decide. Price's hope to raise a question of fact to defeat the anti-SLAPP motion is misplaced. In ruling on the anti-SLAPP motion, the inquiry for the court will be to determine whether the 20/20 segment could reasonably have been understood as implying Price was unethical. No inquiry as to defendants' intent is necessary. If the court rejects Price's interpretation of the 20/20 segment, then Price must present

---

[1] See *Weller v. American Broadcasting Companies, Inc.* 232 Cal.App.3d 991, 1000, fn. 8 & 9 (1991).

evidence that he is not wealthy and that his church is fully transparent. Otherwise, the published statements about Price are substantially true and there is no defamation. Because only Price possess information as to his financial wealth and the transparency of his church, discovery as to the defendants is not necessary to oppose the anti-SLAPP motion. As such, no discovery should be allowed.

Accordingly, Trinity respectfully requests that this Court deny Price's request to conduct discovery as to Trinity and ABC.

## III. PLAINTIFF CONTENDS THAT DISCOVERY REGARDING DEFENDANTS' DEFAMATORY INTENT SUPPORTS PLAINTIFF'S THEORY OF THE "GIST" AND "STING" OF THE PROGRAM.

### A. To Determine the "Gist" or "Sting" the Court Must View the Program as a Whole.

When a court reviews the evidence to determine the falsity of the publication, it must consider the "gist" or "sting" of the broadcast. *Hughes v. Hughes*, 122 Cal. App. 4th 931, 936 (2004).

> "[T]he alleged slanderous publication is to be construed 'as well from the expressions used as from the whole scope and apparent object of the writer.'(CITE)…'not only is the language employed to be regarded with reference to the actual words used, but according to the sense and meaning under all the circumstances attending the publication which such language may fairly be presumed to have conveyed to those to whom it was published. So that in such cases the language is uniformly to be regarded with what has been its effect, actual or presumed, and its sense is to be arrived at with the help of the cause and occasion of its publication.'" *Semple v. Andrews*, 27 Cal. App. 2d 228, 233 (1938).

Here the "gist" or "sting" of Defendants' broadcast was that Dr. Price deceitfully and unethically funds his lavish lifestyle from the contributions of unwitting parishioners. The title of the program was "Enough!" The message throughout the segment was to stop giving donations to these "bad guys," that reporter John Stossel was "on the case" and "here to say enough!"