1  funds from their church donations and that the Clip the ABC Defendants received from
2  the Trinity Defendants was intentionally edited to conform to a pre-determined story
3  line. Their testimony should also reveal that they created the storyline and either
4  instructed employees to edit footage calculated to depict that message or edited the
5  footage themselves, and provided instruction regarding the sense of incredulity, shock
6  and outrage that should be portrayed by the on-air reporters with regard to the conduct of
7  the ministers depicted in the Program.

8  In addition, Plaintiff seeks editor's, director's and producer's notes for the Program
9  and the Teasers. Plaintiff also seeks written correspondence between the ABC
10 Defendants and the Trinity Defendants regarding Plaintiff and the footage provided by
11 Trinity to ABC. This information will reveal the ABC Defendants' editorial processes
12 and their intent to create a defamatory Program.

13 Should this evidence reveal, as Plaintiff believes it will, that the ABC Defendants
14 intended to falsely attribute statements to Plaintiff for the purpose of creating the illusion
15 that Plaintiff was making a self-condemnatory statement, then Defendants' argument that
16 the intended "truth" of the broadcast was simply that Plaintiff was rich, would be
17 revealed for what it is—a transparent attempt to derive an innocent interpretation from
18 an intentionally defamatory broadcast after the fact.

19 **VII.   ABC: DISCOVERY SHOULD BE DENIED**
20    **A.   ABC: DISCOVERY IS NOT NECESSARY AND NOT PERMITTED**
21         **TO OPPOSE ABC'S ANTI-SLAPP MOTION**

22 The fundamental purpose of the Anti-SLAPP statute is to provide for the *early*
23 *resolution* of meritless actions that threaten to chill the valid exercise of the
24 constitutional right of freedom of speech. *See Equilon Enters. v. Consumer Cause, Inc.*,
25 29 Cal. 4th 53, 65 (2002); Cal. Civ. Proc. § 425.16(a) ("The Legislature finds and
26 declares that there has been a disturbing increase in lawsuits brought primarily to chill
27 the valid exercise of the constitutional right[] of freedom of speech[.]"). Indeed, the
28 Anti-SLAPP Statute "'protect[s] defendants from having to expend resources defending

1  against frivolous SLAPP suits unless and until a plaintiff establishes the viability of its
2  claim by a prima facie showing.'" *Paterno v. Super. Ct.*, 163 Cal. App. 4th 1342, 1349
3  (2008) (citing *Britts v. Super. Ct.*, 145 Cal. App. 4th 1112, 1124 (2006)).

4  Consistent with the central goal of the Anti-SLAPP Statute, the filing of an anti-
5  SLAPP motion mandates a stay of all discovery. *See* Cal. Civ. Proc. Code § 425.16(g)
6  ("All discovery proceedings in the action shall be stayed upon the filing of a notice of
7  motion made pursuant to this section."). Pursuant to the Anti-SLAPP Statute, discovery
8  is permitted *only* upon a showing of "good cause." *Id.*; *see also* Fed. R. Civ. Proc. 56(f)
9  (allowing discovery only where "essential to justify" opposition to motion for summary
10 judgment).

11 Where an anti-SLAPP motion is based upon falsity, no discovery is necessary to
12 oppose the motion because evidence of falsity is entirely within a defamation plaintiff's
13 knowledge. *See New.Net, Inc.*, 356 F. Supp. 2d at 1112 ("Because evidence proving that
14 Plaintiff is not a data miner lies exclusively in its own hands, permitting discovery into
15 the issue of falsity will not help plaintiff to bolster its position."); *Garment Workers Ctr.*
16 *v. Super. Ct.*, 117 Cal. App. 4th 1156, 1162-63 (2004) (explaining that plaintiff should
17 be able to establish falsity without discovery); *see also* Fed. R. Civ. Proc. 56(f) (allowing
18 discovery only where essential to opposition); Fed. R. Civ. Proc. 26(b)(2)(C)(i) (court
19 may limit the frequency or extent of discovery otherwise allowed if the discovery sought
20 "can be obtained from some other source that is more convenient, less burdensome, or
21 less expensive").

22 Plaintiff's claim for defamation by implication does not alter this conclusion. In
23 order to prevail on a claim for defamation by implication, Plaintiff bears the burden to
24 satisfy two *threshold* issues, which can be decided as a matter of law: (1) that plaintiff's
25 interpretation of defendant's statements is reasonable and (2) that the alleged
26 interpretation is a provably false factual assertion. *See Nygard, Inc. v. Uusi-Kerttula*,
27 159 Cal. App. 4th 1027, 1049 (2008); *Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 264,
28 280 (2001). In other words, Plaintiff must establish that ABC's statements can

reasonably be interpreted as implying a provably false statement of fact.

Plaintiff's authorities confirm that the issue of whether the alleged statements are provably false factual statements, is a *threshold* issue. *See Empire Printing Co. v. Roden*, 247 F.2d 8, 14 (9th Cir. 1957) (whether the publication was capable of alleged defamatory meaning is threshold question); *Hughes v. Hughes*, 122 Cal. App. 4th 931, 937 (2004) (explaining whether a statement can reasonably understood to make the defamatory meaning charged is a threshold "legal issue").

The cases that Plaintiff relies upon fail to stand for the proposition that Plaintiff may ignore these threshold issues on a claim for defamation by implication. Rather, Plaintiff's cases illustrate how courts first determine these crucial threshold questions *before* considering evidence of defendant's intent. *See MacLeod v. Tribune Pub. Co.*, 52 Cal. 2d 536, 544-45, 547, 551 (Cal. 1959) (first concluding that plaintiff's interpretation of the alleged statements was reasonable and that the alleged statements were provably false assertions of fact *before* analyzing relevance of defendant's intent); *Weller v. Am. Broad. Cos., Inc.*, 232 Cal. App. 3d 991 (1991) ("[I]f a defamation claim is based on allegations of *implied* defamatory facts, *the court must make a threshold preliminary determination whether the published statements could be understood as implying the alleged defamatory content.*") (second emphasis added).

Plaintiff's reliance on *Overstock.com Inc. v. Gradient Analytics, Inc.*, is particularly misguided. In that case, the court discusses the issue of intent with respect to the issue of *malice*, and *not* with respect to the issue of whether plaintiff's alleged defamatory implications were actionable. *See Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 709-10, (Cal. App. 2007) (citations omitted); *see also Herbert v. Lando*, 441 U.S. 153 (1979) (focusing on state of mind solely with respect to the issue of malice and not with respect to the issue of whether the alleged statements were provably false assertions of fact).

The element of malice, however, will not be – and need not be – addressed in the Anti-SLAPP Motion because the motion will focus exclusively on Plaintiff's failure to

1 establish that the alleged statements are false.[5] Under well-established law, if a court
2 finds that the plaintiff's "allegedly defamatory implications are not actionable, *there is*
3 *no need for the Court to consider whether Plaintiff has made a showing of actual*
4 *malice.*" *Thomas*, 189 F. Supp. 2d at 1017 (emphasis added); *see also Nygard, Inc.*, 159
5 Cal. App. 4th at 1054 (where plaintiffs failed to make requisite showing of falsity, court
6 "need not consider . . . whether the challenged statements were made with actual
7 malice"); *see also Garment Workers Ctr.*, 117 Cal. App. 4th at 1162-63 ("Even if it
8 looks as if the defendant's actual malice may be an issue in the case, if it appears from
9 the SLAPP motion there are significant issues as to falsity or publication – issues which
10 the plaintiff should be able to establish without discovery – the court should consider
11 resolving those issues before permitting what may otherwise turn out to be unnecessary,
12 expensive and burdensome discovery proceedings.").

13     In *Paterno v. Superior Court*, the California Court of Appeal in June 2008,
14 expressly rejected an attempt, just like Plaintiff's attempt here, to seek prematurely
15 discovery on defendant's intent on the basis of a claim for defamation by implication.
16 *Paterno*, 163 Cal. App. 4th at 1350-51. There, plaintiff sued defendant for defamation
17 after defendant wrote a magazine article criticizing plaintiff. *Id.* at 1346. Plaintiff's
18 defamation claim was premised upon alleged false implications arising from defendant's
19 statements. *Id.* (article allegedly "falsely impl[ied] that [plaintiff's] personal agenda
20 improperly influenced the newspaper's reporting").

21     When the *Paterno* defendant filed an anti-SLAPP motion, plaintiff sought to
22 depose the defendant reporter and sought all documents reflecting, relating or referring

---

[5] In the event that this action survives the Anti-SLAPP Motion, ABC fully intends to assert its lack of malice as a defense in later stages in the proceedings. At that time, Plaintiff will have the opportunity to conduct discovery on the issue of malice. There is no need for Plaintiff to address that issue now, however, since the Anti-SLAPP Motion focuses solely on Plaintiff's inability to establish that false statements of fact were made about him.

to defendant's preparation of the article. *Id.* at 1347. "[Plaintiff] claimed this 'limited' discovery was necessary to show [defendant's] subjective state of mind regarding the truth or falsity of her statements." *Id.* The Court of Appeal held that the plaintiff was not entitled to discovery regarding defendant's intent unless plaintiff first "ma[de] a prima facie showing that the defendant's published statements contain provably false factual assertions." *Id.* at 1349.

The *Paterno* court overturned the trial court's order allowing discovery after determining that plaintiff failed to make this requisite prima facie showing as to an alleged defamatory inference. *Id.* at 1355-56. After analyzing the alleged defamatory statement within the context of the article as a whole, the court concluded, as a matter of law, that the published statement did not imply a provably false assertion of fact, and thus, denied discovery on defendant's intent. *Id.* at 1355-57. In reaching this conclusion, the Court of Appeal stressed that, "[f]orcing [defendant] to submit to discovery in the absence of good cause jeopardizes the protections afforded by the anti-SLAPP statute against harassing litigation." *Id.* at 1357. The same holds true in this case.

### B.   ABC: COURTS ROUTINELY DENY DISCOVERY WHERE IT IS NOT NECESSARY TO OPPOSE THE ANTI-SLAPP MOTION

Courts routinely deny discovery where it is not necessary to oppose an anti-SLAPP motion. For instance, in *Global Telemedia Int'l, Inc. v. Doe 1*, the Central District denied discovery where there were no further facts necessary to evaluate the questions raised in the anti-SLAPP motion. 132 F. Supp. 2d 1261, 1270-71 (C.D. Cal. 2001). The court explained that the discovery sought was "irrelevant to the questions raised in the [anti-SLAPP] motion." *Id.* Since the questions raised in the motion were dispositive of the action, the court held that plaintiff was not entitled to discovery. *Id.* Likewise, in *Paterno*, the Court of Appeal overturned a trial court order allowing discovery because "no good cause supported the discovery order." 163 Cal. App. 4th at 1350-51. Indeed, plaintiff failed to establish the existence of provably false assertions of

1  fact, which failure rendered the plaintiff's request for "limited" discovery of the
2  defendant's subjective state of mind, completely unnecessary. *Id.* at 1347, 1356-57.

3        As the Honorable Gary A. Feess explained in *New.net, Inc.*, discovery should be
4  denied pending an anti-SLAPP motion where it is not relevant to the opposition. 356 F.
5  Supp. 2d at 1101-02. Pertinent here, Judge Feess explained that to the extent discovery
6  would contain relevant information, most of it was already known to plaintiff. *Id.* (since
7  "information is in Plaintiff's hands, . . . granting time to engage in discovery would be of
8  no assistance to Plaintiff").

9        In this case, the only relevant evidence that Plaintiff needs to oppose the Anti-
10 SLAPP Motion are copies of the News Report, which ABC has already provided
11 Plaintiff (Fink Decl. ¶ 17), and evidence of *his* possessions, *his* public statements, and
12 *his* practices regarding fiscal transparency. Plaintiff is clearly equipped to proffer this
13 evidence (if any existed) to show the News Report was false.[6]

14       Notwithstanding the foregoing, Plaintiff seeks to conduct formal discovery as to
15 ABC's "intent" in creating the News Report. In particular, Plaintiff seeks to depose (a)
16 John Stossel, who presented the News Report; (b) Glenn Ruppel, who produced the
17 News Report; and (c) Ruth Iwano, who edited the News Report. Plaintiff further seeks
18 to obtain the following documents from these individuals: (a) footage that ABC received
19 regarding Plaintiff; (b) documents related to purported "editor's notes," "director's
20 notes," and "producer's notes" regarding the News Report; (c) documents allegedly
21 exchanged between ABC and Trinity; and (d) documents regarding footage of Plaintiff
22 allegedly received from Trinity.[7]

---

[6] Once the motion is on file, it will be readily apparent that Plaintiff needs absolutely no discovery to oppose the limited grounds upon which the motion will be brought – *i.e.*, lack of falsity. As the parties have already agreed, the motion will be filed on or before September 22, 2008.

[7] Plaintiff also propounded document requests on ABC, and ABC timely objected to those requests. Fink Decl. ¶ 16. Plaintiff has not initiated the Rule 37-1 meet and confer

Plaintiff, however, has not specified – and cannot specify – how this information is necessary to oppose ABC's Anti-SLAPP Motion premised on falsity. Plaintiff does not need testimony or documents about ABC's editorial process to rebut the *only* statements that are at issue: (1) that Plaintiff has a mansion, uses a luxury jet, and has driven a luxury car; (2) that Plaintiff boasts about his wealth; or (3) that Plaintiff asks donors for money but does not openly reveal exactly how donations are spent. ABC's editorial process simply has no bearing on whether these statements were false. Indeed, if anyone can offer evidence to contradict these statements, it would be Plaintiff himself.

The same holds true for the so-called "implications" that Plaintiff erroneously attributes to the News Report – *e.g.*, that Plaintiff is "corrupt" or that he "steals money from his church." Evidence of ABC's intent is wholly irrelevant to the threshold issues of whether the implications (1) are reasonable and (2) are provably false assertions of fact. Plaintiff and the Court can only look to the News Report itself in order to determine whether Plaintiff can satisfy his burden in establishing these issues (a burden which Plaintiff cannot possibly carry).

In short, the discovery Plaintiff seeks is well within *his* knowledge and the information available to him. Accordingly, Plaintiff does not need any discovery to oppose the Anti-SLAPP Motion. *See Global Telemedia Int'l, Inc.*, 132 F. Supp. 2d at 1270-71; *Paterno*, 163 Cal. App. 4th at 1347, 1350-51, 1356-57; *New.net, Inc.*, 356 F. Supp. 2d at 1101-02.

Plaintiff's attempt to conduct premature discovery that he does not need – concerning ABC's editorial process – flies in the face of the protections provided by the Anti-SLAPP Statute, which aims to secure the early resolution of proceedings that threaten the freedom of speech. Pursuant to the statute, "it is in the public interest to encourage continued participation in matters of public significance, and . . . this participation should not be chilled through abuse of the judicial process." Cal. Civ.

---

process regarding ABC's objections to those document requests. *Id.*

Proc. Code § 425.16(a). Thus, the Anti-SLAPP Statute was designed for situations exactly like this case, where a matter of public significance is involved (the fiscal transparency of religious organizations), and Plaintiff is claiming entitlement to expansive and intrusive discovery on matters that have nothing to do with the only issue before the Court on the Anti-SLAPP Motion. Plaintiff's frontal attack on the very purpose of the Anti-SLAPP Statute should be rejected.

Moreover, Plaintiff's tactic is a transparent attempt to distract from his inability to oppose the sole argument in the anti-SLAPP Motion – *i.e.*, that the News Report was true. In essence, confronted with the plain truth of the News Report that is apparent on the face of the broadcast, Plaintiff seeks to inject facts into the truth analysis to create ambiguity where none exists. Indeed, Plaintiff wants to delve into the process ABC employed to create the News Report, although that process has nothing at all to do with whether the News Report is true. Thus, Plaintiff's requested discovery would not advance the truth analysis in any respect.[8]

### C. ABC: THE DOCUMENT REQUESTS THAT ACCOMPANIED THE DEPOSITION NOTICES WERE UNTIMELY

Not only is Plaintiff not entitled to discovery at this juncture, but his deposition notices and accompanying requests for documents were procedurally defective. Pursuant to Rule 30(b)(2) of the Federal Rules of Civil Procedure, a deposition notice may be accompanied by a Rule 34 request for production of documents, but Rule 34 requires that any such document requests be made thirty (30) days prior to the date responses are due. Plaintiff requested that the deponents produce documents on the

---

[8] This is not the first time Plaintiff has tried such an avoidance tactic, and without success. He dismissed his original complaint, only to re-file in the wrong venue (New York) and for the express stated purpose of avoiding the Anti-SLAPP Statute. Now that the action has returned to the proper venue, Plaintiff once again faces the case-dispositive Anti-SLAPP Motion and he has renewed his efforts to avoid a ruling on the motion. The Anti-SLAPP Motion should be decided, without resorting to matters completely outside the scope of the motion, and without further delay and expense.